John MORSE

v.

Jack BELSOM, et al.

Civ. A. No. 87-2706.

United States District Court, E.D. Louisiana.

May 16, 1989.

Dale C. Wilks, New Orleans, La., for plaintiff John Morse.

Reginald J. Laurent, Asst. City Atty., New Orleans, La., for defendants City of New Orleans, Henry M. Morris, and Warren Woodfork.

Ralph D. Dwyer, Jr., New Orleans, La., for defendants Civil Service Comm'n and Jack Belsom.

## ORDER AND REASONS

SEAR, District Judge.

I.

Plaintiff John Morse, a white former police officer with the New Orleans Police Department brought this action against defendants, Jack Belsom ("Belsom"), the former Director of Civil Service for the City of New Orleans, Warren Woodfork ("Woodfork"), the current Police Superintendent for the City of New Orleans and the City of New Orleans (the "City") under 42 U.S.C. Sections 1981 and 1983 for alleged violations of plaintiff's constitutional rights.

Plaintiff specifically claims that Belsom and the City violated his rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution by canceling his promotion to sergeant and later appointing a less qualified black officer to the same position. He alleges that this action was a constructive discharge, compelling him to retire from the police department. Additionally, plaintiff charges that Woodfork's refusal to reinstate him upon learning of the circumstances surrounding his lost promotion constituted a ratification of the previous actions and was therefore itself violative of plaintiff's constitutional rights.

A discussion of prior and related litigation is necessary to a full understanding of this action. Of particular relevance is *Larry Williams, et al. v. City of New Orleans, et al.*, C.A. 73–629, in which black New Orleans police officers brought a class action for relief from alleged discrimination practiced against blacks in hiring and promotion in the New Orleans Police Department. The parties reached agreement on the resolution of the complaint and presented a proposed consent decree for court approval. Following a hearing on the fairness of the proposed consent decree, I refused to approve it. *Williams, et al. v. City of New Orleans, et al.*, 543 F.Supp. 662 (E.D.La.1982). The case was appealed to the Fifth Circuit Court of Appeals which reversed my decision, and pursuant to the Fifth Circuit's mandate, I thereafter entered the consent decree on December 16, 1982. *See Williams, et al. v. City of New Orleans, et al.*, 694 F.2d 987 (5th Cir.1982).

Paragraph VI of the consent decree required the defendants, among other things, to create and fund thirty new sergeant positions in addition to those which existed as of October 12, 1981. It further provided that the new positions would be filled by black officers on the "list of eligibles" for promotion maintained for the police department by the city's Department of Civil Service, regardless of their place on that list with relation to white officers. However, the decree provided that no preference would be given blacks for promotions to the positions already existing as of October 12, 1981. The parties agreed that on that date, there were 194 authorized sergeant positions, nine of which were then vacant. The defendants agreed to promote, pursuant to civil service regulations, a sufficient number of officers to fill the vacant positions existing as of October 12, 1981. In addition, the defendants agreed to promote as many as thirteen black officers to the newly created sergeant positions.

An *en banc* hearing of the panel decision in *Williams* was ordered by the Fifth Circuit. On April 23, 1984, the *en banc* court reversed the panel decision. *Williams, et al. v. City of New Orleans et al.*, 729 F.2d 1554 (5th Cir.1984). The parties thereafter negotiated a new agreement which I approved on July 15, 1987, following a hearing on its fairness. Paragraph VI of the original decree was altered by the second decree. The reference to the figure 194 as the number of authorized positions existing as of October 12, 1981, was deleted. However, the footnote indicating that nine of the existing sergeant positions were vacant as of October 12, 1981 remained. Moreover, while other provisions of the decree were changed in various ways, the underlying principle was unaltered: a number of additional sergeant positions were to be created to which only eligible blacks would be promoted, with no racial preference for

promotions made to the nine vacant positions that existed as of October 12, 1981.

## II.

In November of 1981, plaintiff held the rank of Police Officer II and occupied position number 53 on the list of eligibles for promotion to sergeant. On or about November 18, 1981, Henry Morris, who was then superintendent of the New Orleans Police Department, in his official capacity, and in accordance with applicable civil service rules and regulations, authorized the promotion of twenty-one police officers, including plaintiff, to sergeant. The superintendent forwarded the appropriate promotion forms to the city's Chief Administrative Office which then confirmed that the positions were budgeted and in turn forwarded the forms to the Civil Service Department which Belsom headed. The parties have stipulated that Belsom took no action on the promotions at the direction of Wood Brown, II, then Chairman of the Civil Service Commission, and the promotions were in essence cancelled in late November of 1981. According to the testimony of Jeanice Roussel, personnel director for the New Orleans Police Department, the forms were subsequently returned to the police department, stamped "cancelled".

Approximately one year later, on or about December 23, 1982, nine white and twelve black officers were promoted to sergeant. The twelve black officers held positions on the list of eligibles lower than the plaintiff's. Thus, had the twelve positions been filled in accordance with normal civil service regulations, plaintiff would have been promoted ahead of the twelve blacks. It is evident that the black officers' promotion was intended to satisfy the requirements of the first *Williams* consent decree, which was still in effect in December of 1982. Plaintiff contends, however, that the promotions violated that decree, because they were to positions already budgeted and existing on October 12, 1981 rather than to new positions which the *Williams* defendants had agreed to create.

Plaintiff claims that after learning of the black officers' promotion, he became de-

spondent over his future as a New Orleans police officer and decided to retire upon becoming eligible after sixteen years of active service. Plaintiff avers that his retirement in April 1983 was a constructive discharge and that he would not have retired had he been promoted.

## III.

Plaintiff's claims against Belsom were based on Belsom's alleged approval of the twelve black officers' promotion in violation of the first *Williams* consent decree and plaintiff's constitutional rights. At the close of plaintiff's evidence, Belsom moved for a directed verdict. Plaintiff agreed that there was no basis for liability, and the motion was granted.

Plaintiff's claims against Woodfork were based upon the superintendent's alleged wrongful refusal to reinstate plaintiff after learning of the circumstances surrounding plaintiff's lost promotion and subsequent retirement. Plaintiff contended that Woodfork's failure to act constituted a ratification of the earlier unconstitutional actions and was therefore itself a violation of plaintiff's constitutional rights. Woodfork also moved for a directed verdict at the close of plaintiff's evidence. While not conceding that Woodfork was entitled to a directed verdict, plaintiff offered no argument in opposition to the motion, and the motion was granted.

■ I find that Woodfork's actions in refusing to reinstate the plaintiff were clearly protected by the superintendent's qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Harlow*, the court held that "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* 102 S.Ct. at 2738. Certainly, a reasonable person could not have known that plaintiff had a clear constitutional or statutory right to be reinstated as a sergeant when, by his own admission, plaintiff listed "voluntary retirement"

on his exit form as his sole reason for leaving the police department.[1] There is no constitutional or statutory right to be reinstated to employment from which one has voluntarily retired, and it was reasonable for Woodfork to determine that plaintiff had done exactly that, given plaintiff's statement on the exit form. The superintendent's refusal to reinstate plaintiff cannot be construed as a ratification of prior wrongful acts allegedly committed by the other defendants.

 The only remaining defendant is the City. Plaintiff first claims that the City's action in approving the promotion of the twelve black police officers constitutes a violation of 42 U.S.C. Section 1981 which provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Plaintiff's theory is that the *Williams* consent decree is a contract which the defendants have breached and which plaintiff may enforce as a third party beneficiary. Assuming *arguendo* that the consent decree is a contract; that breach of it would constitute a violation of Section 1981; and that plaintiff, a white former police officer, is a third party beneficiary of paragraph VI, plaintiff's claim fails, because the consent decree was not violated.

The consent decree provides that the positions to be created "shall be in addition to those that existed on October 12, 1981". The parties agreed that as of that date, there were 194 sergeant positions in exist-

ence. The parties further agreed that of those 194 positions, nine were vacant and would be filled pursuant to normal civil service regulations. Thus, the appointment on December 23, 1982 of nine white officers and twelve black officers to sergeant complied with the decree. The nine whites were appointed in accordance with civil service requirements to the already existing but vacant positions, while the twelve blacks were appointed to positions which, by the terms of the decree, were newly created. Plaintiff offered no reason why I should alter the numbers agreed upon in the decree, and I can think of none. Thus, the promotions were clearly in compliance with the original decree and not violative of 42 U.S.C. Section 1981.[2]

I recognize that Ms. Roussel testified that there were 210 budgeted sergeant positions in 1981 and 206 in 1982; she further testified that none of the positions to which the officers were promoted in 1982 were newly budgeted. However, there was also testimony that the police department budget is appropriated without regard to specific positions and that the terms "authorized" and "budgeted" are subject to various meanings and interpretations. Thus, plaintiff did not carry his burden of proving that the promotion of nine white and twelve black officers to the rank of sergeant violated the consent decree.

 Plaintiff's final claim is that the City violated 42 U.S.C. Section 1983 by wrongfully promoting the black officers instead of him. The Supreme Court's most recent pronouncement on the issue of municipal liability under Section 1983 is found in *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). There, the court held that a municipality may be found liable if it has committed a constitutional tort through a "policy statement, ordinance, regulation, or deci-

---

1. See plaintiff's Exhibit "J".

2. The promotions did not violate the modified decree either. While the modified decree does not include the agreement that the 194 authorized sergeant positions existed as of October 12, 1981, it does retain the agreement that October 12 be the baseline date and that nine autho-

rized sergeant vacancies existed as of that time. Thus, when nine white officers were appointed pursuant to civil service regulations, the agreed upon nine vacancies were filled, and the twelve black officers were therefore appointed to posts which were in addition to the already existing positions contemplated by the agreement.

sion officially adopted and promulgated by that body's officers." *Id.* 108 S.Ct. at 923 (citations omitted). The court also held that governmental "custom" may be a basis for liability even if that custom "has not received formal approval through the [city's] official decisionmaking channels." *Id.* (citations omitted). Further, the court acknowledged that "an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *Id.* (citations omitted).

Because I find that the city has not violated the *Williams* consent decree, and because plaintiff has not challenged the validity of the decree itself, it is unnecessary to determine whether plaintiff has carried his burden of proving the presence of the final policymaker requirements which *Praprotnik* mandates.

Accordingly, plaintiff's complaint is DISMISSED.

Let judgment be entered accordingly.

